O

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | |
|---|---|
| JAVIER VELA, §<br>    Plaintiff, §<br>§<br>         v. §<br>§<br>§<br>MICHAEL CHERTOFF §<br>Secretary, Department of Homeland §<br>Security §<br>    Defendant. | Civil Action No. L–05–cv–217 |

**Memorandum and Order**

Plaintiff Javier Vela makes four separate allegations in the live pleading before this court. (Dkt. No. 24, p. 3). First, he alleges that he was not selected for the position of Supervisory Customs Inspector under vacancy announcement SOTEX/02-003MTA (hereafter "first non-selection") due to gender and age discrimination. Vela, a male, applied for the position on April 24, 2002, when he was forty-seven years old. There were thirty-one applicants. Twelve were selected, including eleven men and one woman. Two of the selectees were over the age of 40.

Second, Vela alleges that he was again passed over for promotion to Supervisory Customs Inspector, this time under vacancy announcement SOTEX/02-007MTA ("second non-selection"). He alleges that his non-selection was either due to his age or as retaliation for filing a discrimination complaint regarding his first non-selection. There were 21 applicants for the position, of whom three were selected. The ultimate selectees included three men, two of whom were over the age of 40 and one of whom had participated in prior EEO activity.

Third, he alleges that he was reassigned from his collateral duties as Range Officer during the September 2004 firearms qualification trimester because of his age and in retaliation for his previous EEO complaints. On September 13, 2004, Vela had been informed that he was not permitted to serve as a Range Officer during the immediate firearms qualification training cycle. Vela had previously and consistently been allowed to participate.

Finally, Vela alleges that he was suspended for two days as retaliation for his prior EEO activity. Vela's suspension followed his surreptitious recording of conversations with other employees in the workplace.

*Procedural History–Administrative Proceedings*

Vela exhausted his administrative remedies for each of these claims except age discrimination with respect to the Range Officer incident. Following his first non-selection, on March 24, 2003, Vela filed a formal complaint with the Department of Treasury.[1] He received his "Notice of Right to File a Discrimination Complaint" on March 24, 2003. (Dkt. No. 28-2, Ex. A). An administrative hearing regarding the complaint was held February 23, February 24, and March 5, 2004. (Dkt. No. 33-2, Ex. 5). On December 13, 2004, the administrative judge issued a decision, finding no discrimination. (Dkt. No. 28-2, Ex. B). The Department of Homeland Security (DHS) issued its final order implementing the decision on January 25, 2005. (Dkt. No. 28-2, Ex. C). The plaintiff appealed the administrative judge's decision to the Equal

---

[1] The Department of the Treasury was one of the legacy agencies for the current Department of Homeland Security.

Employment Opportunity Commission (EEOC), which affirmed the administrative judge's decision on July 20, 2005. (Dkt. No. 28-2, Ex. E).

Following his second non-selection, on October 29, 2003, Vela filed his second formal administrative complaint. (Dkt. No. 28-2, Ex. F). He amended his complaint on November 8, 2004 to include his claim that he was prevented from serving as a Range Officer as retaliation for prior EEO activity. (Dkt. No. 28-2, Ex. H). On August 25, 2005 an administrative hearing was held, and on September 27, 2005, a written decision was issued, finding no retaliation in the second non-selection, but finding retaliation in Vela's reassignment from Range Officer duties and awarding Vela $1000.00 in damages. (Dkt. No. 28-2, Ex. I; Dkt. No. 33-2, Ex. 28). The Department of Homeland Security declined to implement the administrative judge's decision and appealed to the EEOC. (Dkt. No. 28-2, Ex. J). Since Vela had amended his pleading in this Court to include these matters, the EEOC dismissed the agency's appeal based on its policy to avoid wasting resources and creating potentially inconsistent or conflicting opinions. (Dkt. No. 28-2, Ex. K).

On September 27, 2005, Vela filed his final administrative complaint, alleging that his two-day suspension was retaliation for prior EEO activity. (Dkt. No. 28-2, Ex. L). On September 19, 2006, the administrative judge held that retaliation was not the cause of Vela's suspension. (Dkt. No. 28-2, Ex. M).

*Procedural History–-Proceedings Before This Court*

On October 17, 2005, Vela filed his first complaint in this court, alleging the age and sex discrimination claims regarding the first non-selection. (Dkt. No. 1). On February 9, 2006, Vela filed his First Amended Complaint to include the age discrimination and retaliation claims

regarding the second non-selection and retaliation regarding the Range Officer matter. (Dkt. No. 14). He also added a claim of age discrimination regarding the Range Officer matter. Id. This claim was not raised in his prior EEO complaint. (Dkt. No. 35).On December 11, 2006, Vela filed his Second Amended Complaint, the live pleading before this Court, which incorporated the age and sex discrimination claims regarding the first non-selection, the age discrimination and retaliation claims regarding the second non-selection, the age discrimination and retaliation claims regarding the Range Officer matter, and the retaliation claims regarding the two-day suspension. (Dkt. No. 24). Defendant Department of Homeland Security (DHS) has filed a Motion for Summary Judgment (Dkt. No. 28), and the plaintiff has responded. (Dkt. No. 33).

## Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex v. Catrett, 477 U.S. 317, 322 (1986); Little v. Liquid Air Corp., 317 F.3d 1069, 1075 (5th Cir. 1994). A disputed fact is "material" if its resolution could impact the outcome of the action. Id. Doubts and all reasonable inferences must be resolved in favor of the nonmoving party. Fierros v. Texas Dept. of Health, 274 F.3d 187, 190 (5th Cir. 2001). The Supreme Court has stressed that, in evaluating summary judgment evidence in Title VII cases, courts "must refrain from the making of 'credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts,'" leaving such actions to juries. Id. (quoting Reeves v. Sanderson Plumbing Prods, Inc., 530 U.S. 133, 150 (2000)).

**Analysis**

*Statutory Authority*

The plaintiff's gender discrimination claim is brought under Title VII (42 U.S.C. § 2000e, et seq), which bars an employer from discriminating against any individual "with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's sex."  42 U.S.C. § 2000e-2(a)(1).  The plaintiff's age discrimination claim is brought under the Age Discrimination in Employment Act (ADEA), which prohibits discrimination based on an employee's age.  29 U.S.C. § 633(a).  Protected individuals must be age forty or older.  29 U.S.C. § 631(a).  The plaintiff also claims that he was retaliated against "for engaging in the EEO process in violation of the ADEA and Title VII."  (Dkt. No. 24, Second Amended Complaint, para. 32-34).  Title VII forbids retaliating against an employee "because [the employee] has opposed any practice made an unlawful employment practice...or because [the employee] has made a charge..."  42 U.S.C. § 2000e-3(a).

While the ADEA prohibits retaliation, courts disagree about whether the waiver of sovereign immunity that allows the ADEA to apply to federal agencies covers claims of retaliation. The waiver provision is  "all personnel actions affecting employees or applicants for employment who are at least 40 years of age.... in executive agencies... shall be made free from any discrimination based on age." 29 U.S.C. §633(a). Some courts have interpreted this waiver narrowly, holding that because retaliation is not mentioned in the waiver, Congress did not waive sovereign immunity with respect to those claims. See Gomez-Perez v. Potter, 476 F.3d 54 (1st Cir. 2007); Patrick v. Chertoff, 2005 U.S. Dist. Lexis 15193 (N.D. Tex. 2005); Cyr v. Perry, 301 F. Supp. 2d 527 (E. D. Va. 2004). Other courts have held that the waiver does cover retaliation

charges, reading the phrase "any discrimination based on age" to include retaliation. Forman v. Small, 271 F.3d 285 (D.C. Cir. 2001); Bornholdt v. Brady, 869 F.2d 57 (2nd Cir. 1989). It is not necessary for this Court to decide this issue. Vela's first complaint included Title VII discrimination. The retaliation complaint in the second EEO complaint can be viewed as retaliation for filing a complaint that included discrimination under Title VII. The subsequent complaint can be viewed either as retaliation for the first complaint, which included Title VII discrimination, or retaliation for the second complaint, which also implicated Title VII because of the Title VII retaliation claim.

*I. The Title VII and ADEA claims*

An employee may prove intentional discrimination by either direct or circumstantial evidence. Russell v. McKinney Hosp. Venture, 235 F.3d 219, 222 (5th Cir. 2000). If the plaintiff relies only on circumstantial evidence, as in this case, courts apply the burden-shifting evidentiary framework promulgated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Id. This same burden-shifting framework is applied to both Title VII and ADEA claims. Brodenheimer v. PPG Indus., Inc., 5 F.3d 955, 957, n. 4 (5th Cir. 1993).

Under this framework, plaintiffs must first establish a prima facie case of discrimination. Russell, 235 F.3d at 222; Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 142 (2000). If the plaintiff succeeds, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its action. Russell, 235 F.3d at 222; Tex. Dept. of Cmty. Affairs v. Burdine, 450 U.S. 248, 255-56 (1981). The employer's burden is only one of production, not of persuasion, and involves no credibility assessments. Id. However, the reason must be articulated with sufficient clarity to allow the employee to show that the reason is pretextual. Patrick v.

Ridge, 394 F.3d 311, 317 (5th Cir. 2004). If the employer succeeds, the burden shifts back to the plaintiff, and the factual inquiry becomes more specific. Id. at 315-16. The plaintiff must then show either "1) that the defendant's reason is not true, but is instead a pretext for discrimination;" or "2) that the defendant's reason, while true, is only one of the reasons...and another 'motivating factor' is the plaintiff's protected characteristic." Rachid v. Jack in the Box, Inc., 376 F.3d 305, 312 (5th Cir. 2004). In this case, the plaintiff argues that Customs and Border Protection's (CBP) reasons were pretext for discrimination. In order to avoid summary judgment, the plaintiff must demonstrate that there is a material issue of disputed fact as to the discrimination. Patrick at 315-16.

    *A. First Non-Selection*

Under both Title VII and the ADEA, to prove a prima facie case, the plaintiff must show: 1) he belongs to the protected group, 2) he was qualified for the position, 3) he suffered an adverse employment action; and 4) the person selected was not within the protected group. See Price v. Fed. Exp. Corp., 283 F.3d 715, 720 (5th Cir. 2002); Medina v. Ramsey Steel Co., 238 F.3d 674, 682 (5th Cir. 2001). As DHS acknowledges, Vela demonstrated that he was male and over forty; he was on the best qualified list, and therefore qualified for the position; he was not promoted; and of the people that were selected, one was female and ten were under forty. (Dkt. No. 28, p. 18). Vela has demonstrated prima facie cases on both his Title VII and ADEA claims, albeit marginally as to the sex discrimination.

The burden then shifts to the defendant to articulate a legitimate, non-discriminatory reason for its actions. DHS has produced evidence that Vela was rejected because the selectees were more qualified for the position than Vela. (Dkt. No. 28-5, Ex. S, T, U, V, and

W)(discussing the selectees' stronger oral interviews and stronger ratings and recommendations by references). DHS has met its burden of production. See Russell, 235 F.3d at 222; Burdine, 450 U.S. at 255-56.

The burden then shifts back to Vela to demonstrate pretext. Rios v. Rossotti, 252 F.3d 375, 378 (5th Cir. 2001). Vela argues that the selection process was vague, inconsistent, manipulated by the CBP for discriminatory purposes, and based on subjective criteria. (Dkt. No. 24, para. 14). He takes particular issue with the reference check procedure used in the selection process (Dkt. No. 33). Eugenio Garza, Port Director for Laredo, provided recommendations to Gurdit Dhillon, Director of Field Operations, as to which applicants should fill the twelve open positions. Garza instructed Assistant Port Director Francis Brown and Chief Inspector Rudy Santos to conduct reference checks, and they decided to contact each applicant's supervisor and corresponding chief inspector. (Dkt. No. 33-2, Ex. 8, p. 67). They chose which supervisors to contact based on the area in which the applicant worked. Id. In evaluating the recommendations, Garza considered the first-line supervisor's recommendation important because it was an assessment made by someone who worked closely with the applicants. (Dkt. No. 33-2, Ex. 7, p. 117). He considered the chiefs' recommendation important for similar reasons: "the chiefs work with the first-line supervisors. They supervise the first-line supervisor. Because of the way that we work, a lot of times they end up being first-line supervisors themselves." (Id.)

In the case of the female selectee, Frances B. Garcia, the supervisor listed on her application was contacted. She received a positive reference, and was selected. Of the eleven other selectees, eight of them had the supervisor listed on their application contacted; three did

not. The supervisor Vela listed, Charles Dickenson, his first-line manager from 2001 to 2002, was not contacted. The supervisor who was contacted, Armandina Martin, was Vela's area supervisor while the reference checks were being conducted. She stated that, at the time, she did not know Vela well enough to respond to his qualifications. (Dkt. No. 33-2, Ex. 3, p. 1). She did answer some questions as to his qualifications, though, and she did not recommend him for the job. Id. Chief Inspector Francisco Garcia was also contacted as a reference for Vela, and gave him a negative reference. (Dkt. No. 33-2, Ex. 5, Vol. 2, p. 4).

  Vela has not presented any evidence that the reference check process was manipulated for a discriminatory purpose. The evidence appears to be that CBP contacted the applicants' area supervisors, and that this was done for all of the applicants. Brown also indicated that he was comfortable with Martin's recommendation because "[he] knew [he] was going to do a second reference check. And [Martin] was comfortable enough to answer the other questions straightforward." (Dkt. No. 33-2, Ex.. 8, p. 72). An employer is not required to have a perfect promotion selection process, merely a non-discriminatory one. See Mayberry v. Vought Aircraft Co., 55 F.3d 1086, 1091 (5th Cir. 1995) ("The question is not whether an employer made an erroneous decision; it is whether the decision was made with discriminatory motive.")

  Vela also attempts to show pretext by asserting that he was clearly more qualified for the position the female selectee. To prove pretext in this way, differences between applicants must be "of such weight and significance that no reasonable person, in the exercise of impartial judgement, could have chosen the candidate selected over the plaintiff for the job in question." Celestine v. Petroleos de Venezuella SA, 266 F.3d 343, 357 (5th Cir. 2001) (quoting Deines V. Tex. Dep't of Prot. & Regulatory Serv., 164 F.3d 277, 280-81 (5th Cir. 1999). Similar or

equivalent qualifications are not enough to create a genuine issue of material fact. Price, 283 F.3d at 723. "In order to establish pretext by showing the losing candidate has superior qualifications, the losing candidate's qualifications must 'leap from the record and cry out to all who would listen that he was vastly–or even clearly–more qualified for the subject job." Id. (quoting Odom v. Frank, 3 F.3d 839, 847 (5th Cir. 1993)).

Both Vela and Frances Garcia, the female selectee, had extensive interaction with the public and both candidates had some management/organizational experience. (Dkt. No. 33-2, Ex. 15 & 16). Both candidates attended college and completed comparable hours, but Garcia graduated with two degrees, while Vela did not finish college. Id. It is true that Vela had much more experience with CBP (20.3 years) than Garcia (4.9 years). (Dkt. No. 33-2, Ex. 14). Garcia received positive reference checks; Vela did not. Here, no reasonable jury could find that the differences between the qualifications of the candidates are so extreme that they "leap from the record."

To support his claim of age discrimination, Vela argues that statistics support an inference of age discrimination; that he was clearly better qualified than the younger selectees; and that statements made by Gurdit Dhillon, the Director of Field Operations, are evidence of age discrimination.. Vela points to the fact that 45% of the 31 applicants for the position were over the age of forty, but only two of the twelve selectees were over the age of forty. (Dkt. No. 33, p. 18). Plaintiff does not further explain how these statistics are significant. Given the small sample size, this is not enough to raise a genuine issue of material fact. See Robinson v. City of Dallas 514 F.2d 1271, 1273 (5th Cir. 1975).

Vela argues that Gurdit Dhillon, the Director of Field Operations, used subjective criteria in the selection process. He argues that Dhillon's explanation that he was looking for individuals that would do well in the new environment regarding terrorism was pretext for age discrimination. (Dkt. No. 33, p. 16).Vela also points to Dhillon's statement that Vela was not recommended because he seemed "stuck in the traditional mission like to collect revenue." (Dkt. No. 33, p.17, citing Dkt. No. 28, ex. 6, p. 41). The Fifth Circuit has said that "comments may serve as evidence of age discrimination if they are: 1) age related, 2) proximate in time to the employment decision, 3) made by an individual with authority over the employment decision at issue, and 4) related to the employment decision at issue." Medina v. Ramsey Steel Co., Inc., 238 F.3d 674 (5th Cir. 2001). The only factor at issue here is whether the comments are age related. Indirect references to an employees age can support an inference of age discrimination. Russell v. McKinney Hosp. Venture, 235 F.3d 219, 226 (5th Cir. 2000). A reasonable juror could find that the statements made by Dhillon are indirect references to age. Vela has succeeded in raising a material issue of fact as to whether the explanation offered by CBP is pretextual.

*B. Second Non-Selection - ADEA Claims*

As to the second non-selection, Vela again alleges that he was not selected because of his age. Vela was over forty when he applied for the position, he was not promoted, and one of the selectees was under forty. He therefore makes out a prima facie case of age discrimination, but again marginally. The defendant must then produce evidence showing a non-discriminatory reason for the decision. DHS has produced evidence that the selectees were chosen because of their high recommendations, lack of weaknesses, and initiative in taking on additional duties. (Dkt. No. 28-6, ex. AA and BB) (discussing the high recommendations of the selectees and that

Vela was not recommended by two of three supervisors). The burden is then on Vela to show that this reason is pretext. Vela does not address age discrimination in his Response to the Government's Motion for Summary Judgment. Since he makes no showing that Defendant's reason is pretext for age discrimination, the Court will grant summary judgment for the DHS on this issue.

*C. Range Officer Matter - ADEA Claims*

In his Second Amended Complaint, Plaintiff alleges that age discrimination was a reason why he was not allowed to participate in his collateral duty assignment. The administrative complaint only mentions retaliation, and not age discrimination.(Dkt. No. 35). In order to file a civil action under the ADEA, a federal employee must first either pursue an administrative remedy or give the EEOC at least thirty days notice of the intent to file such action within 180 days of the alleged unlawful practice. Stevens v. Department of the Treasury, 500 U.S. 1 (1991). Vela has not done either of these, so this claim will be dismissed.

*II. Retaliation Claims*

To establish a prima facie case of retaliation, a plaintiff must show that 1.) he engaged in activity protected by Title VII; 2.) that an adverse employment action occurred; and 3.) that there was a causal connection between the participation in the Title VII activity and the adverse employment decision. Shirley v. Chrysler First, Inc., 970 F.2d 39, 42 (5th Cir. 1992). In determining whether a particular act is an adverse employment action, the Supreme Court has said that "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse." Burlington Northern & Sante Fe Ry. Co. v. White, 126 S.Ct. 2405,

2414 (2006). An action is materially adverse if it "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Id. Once the plaintiff has established a prima facie case, the burden shifts to the defendant to articulate a nondiscriminatory reason for the employment action. Shirley at 2414. The plaintiff then has the burden of showing that the reason given was pretext for retaliation. Id.

*A. Second Non-Selection*

Vela engaged in protected activity when he filed the first complaint, and suffered an adverse employment action when he was not selected for the SOTEX/02-007MTA position. The investigation of Vela's first complaint occurred in May and June of 2003; the selections for the second position were made in July 2003. Temporal proximity of the employer's knowledge of the protected activity and the adverse employment action is sufficient to establish the causal link for the purposes of the prima facie case. Clark County Sch. Dist. v. Breeden, 121 S. Ct. 1508, 1511 (2001).

The defendant must then produce a legitimate non-discriminatory reason for adverse employment action. Shirley at 2414. Here, DHS presents evidence that the selectees were better qualified for the job than Vela. (Dkt. No. 28-6, ex. AA and BB). The burden shifts to Vela to show that the reason given is pretext for discrimination. Shirley at 2414. Vela argues that the selection process was manipulated for discriminatory purposes and that his qualifications were objectively superior to those of the selectees.

For the reference check, Garza asked Chief Inspector Jesus Saldivar to conduct reference checks for the position. (Dkt. No. 28-6, ex. AA). Saldivar contacted the first supervisor on each candidate's application for a reference. (Dkt. No. 33-5, ex. 31, p.107). Vela notes that this is not

the same procedure used in the first non-selection. (Dkt. No. 33, p. 22); see supra p. 8. However, it does not follow that this procedure was a pretext for discrimination. A different person, Saldivar, was conducting this reference check, and it is reasonable that his procedure for reference checks might be different than the method used by Brown and Santos in the first selection. Saldivar was consistent in contacting the first supervisor listed for each candidate. Vela has failed to raise a genuine issue of material fact suggesting that the reference check was pretext.

Vela argues that he was objectively better qualified for the position than the selectees. The reason given for the selection of selectees Arturo Perez, Juan Chavez, and Wayne Wilson was that they had more favorable recommendations from their supervisors. Wilson also showed initiative by taking on additional duties at his current position. (Dkt. No. 28-6, ex.BB). Vela then must demonstrate that his qualifications "leap from the record" and show that he is "vastly...more qualified for the subject job." Price v. Fed. Exp. Corp., 283 F.3d 715, 723 (5th Cir. 2002). In his response to the Motion for Summary Judgment, Plaintiff argues that his application was much longer than that of either Perez or Chavez. Perez and Chavez gave concise summaries of their responsibilities, while Vela's application was much more detailed. (Plaintiff's Exhibits 33-36). When evaluating applications, length is not necessarily a virtue. The actual qualifications of the three selectees are not objectively inferior to those of Vela. All three received good recommendations from their supervisors, and had educational and professional credentials on par with Vela's.

Vela has not presented evidence creating a genuine issue of material fact as to whether Title VII retaliation was a reason for his second non-hiring.

*B. Range Officer Matter*

Defendant argues that Vela has not demonstrated a prima facie case of retaliation with respect to the Range Officer matter because he has not shown an adverse employment action. Vela was told to work at his primary duty station rather than being allowed to undertake his collateral duties as a firearms instructor. Reassignment of duties may be actionable, depending on the circumstances. See Burlington at 2417. While this was not technically a reassignment, Vela was not allowed to participate in a preferred job assignment. A reasonable employee facing the choice between filing a complaint or being allowed to participate in a desired job assignment might choose the former. Vela has satisfied this part of the prima facie case.

DHS next argues that Vela has not established a causal connection between his participation in protected activity and not being allowed to participate in his collateral duties. (Dkt. No. 28, p. 31). As noted before, CBP became aware of Vela's participation in protected activity sometime around June of 2003. Vela was not allowed to participate in his collateral duties in September of 2004. Generally, temporal proximity sufficient to establish a causal connection must be very close. Clark County Sch. Dist. v. Breeden, 121 S.Ct. 1508, 1511 (2001). A fifteen month interval, standing alone, is not sufficient to show causation in this instance. See Ajao v. Bed Bath and Beyond, 2008 WL 345505 (5th Cir. 2008) (holding four months is not sufficient temporal proximity to show causation).

The causation showing for the prima facie case is not as stringent as a "but for" standard. Montemayor v. City of San Antonio, 276 F.3d 687, 692 (5th Cir. 2001). Vela argues that the surrounding circumstances of his return to duty, such as the initial secrecy regarding the reasons for his not being allowed to participate in his collateral duties, establishes causation. Given the

low standard for establishing the causation element of the prima facie case, Vela has established causation for this purpose.

The burden then shifts to DHS to produce a legitimate reason for the action. DHS's reason is that Vela was not allowed to report to his collateral duty station because he had been absent for a long period of time and it was important for him to get re-acclimated with his primary duty assignment.(Dkt. No. 28-7, Ex. EE). Also, there was a staffing shortage at his primary duty station. Id. DHS has met its burden.

In a retaliation case, the burden then shifts back to the plaintiff to establish that but for the participation in the protected conduct, the adverse employment action would not have occurred. Septimus v. University of Houston, 399 F.3d 601, 608 (5th Cir. 2005). Vela points to the intial confusion and secrecy concerning his reassignment as evidence that the CBP's reason is pretext for retaliation. Vela has produced evidence that he was not initially informed of why he would not be allowed to participate in his range officer duties, and that he was only informed when he had already reported for duty at the firearms range. (Dkt. No. 33-4, Ex. 28). He also claims that he had notified his supervisor prior to returning to duty, and no mention was made of any procedural hurdles or other problems in his returning to firearms training. (Dkt. No. 33-4, ex. 28). A reasonable fact-finder could find that this is evidence of retaliation.

*C. The Two-Day Suspension*

Vela's final claim is that his two-day suspension was retaliation for his EEO activity. DHS claims that Vela has not established a prima facie case because he has not established a causal connection. (Dkt. 28, p. 32). The suspension occurred only a week prior to Vela's second EEOC hearing. Temporal proximity can establish causation. Clark County Sch. Dist. v. Breeden,

121 S. Ct. 1508, 1511 (2001). Vela has made out a prima facie case of retaliation with regard to the two-day suspension.

Defendant's non-discriminatory reason is that Vela was suspended for violating CBP policies by secretly recording his conversations with other employees. (Dkt. No. 28-8, Ex.HH, II, JJ,KK). Vela then must show that, but for his participation in protected EEO activity, he would not have been suspended. Septimus at 608.

Vela points out that another CBP employee, Richard Wiener, was not disciplined when he was caught tape recording employees. (Dkt. No. 28, p. 33). Defendant explains this seemingly different treatment with an declaration of B. Don Perritt, a staff attorney for CBP, stating that the tape recording was considered during the settlement between Wiener and CBP. (Dkt. No. 34, Ex. 1). Perritt says that the reason that there was no action taken against Wiener for unauthorized tape recording was that, by the time the facts were known and the appropriate people were informed, the draft language for the settlement agreement between the agency and Wiener was already being finalized. It was decided to go ahead and proceed with the existing provisions of the settlement. Id.

Vela does not present any evidence that employees have been caught tape recording conversations and not charged, other than Wiener. Vela does not dispute that it is against CBP policy to tape record employees without their knowledge. Since Vela did violate CBP policy, he has failed to show that but for his protected activity, he would not have been suspended.

## Summary

For the aforementioned reasons, summary judgment is GRANTED for Defendant DHS as to Plaintiff's claim of sex discrimination in the first non-selection; Plaintiff's claims of age

discrimination and retaliation in the second non-selection; Plaintiff's claim of age discrimination in the range officer matter; and Plaintiff's claim of retaliation in the two-day suspension. Summary judgment is DENIED as to Plaintiff's claim of age discrimination in the first non-selection and Plaintiff's claim of retaliation in the range officer matter. Magistrate Judge Saldaña is requested to meet with the parties as soon as possible to determine what needs to be done to ready the case for trial.

DONE at Laredo, Texas, this 17th day of March, 2008.

```
                                    George P. Kazen
                                    United States District Judge
```